IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL MORRIS,

        Plaintiff,

v.

TAMMY DICKMAN, et al.

        Defendants.

OPINION & ORDER

Case No. 15-cv-712-wmc

---

*Pro se* plaintiff Michael Morris has filed multiple versions of his complaint in this lawsuit related to his claims that various defendants violated his constitutional right to access the courts. As Morris's first amended complaint encapsulated the clearest version of the facts comprising his claims, the court construed it as the operative pleading for purposes of screening. Accordingly, on January 9, 2017, the court granted Morris leave to proceed on an access to courts claim against defendants Tammy Dickman and Diane Fremgen and dismissed defendant David Rice.

In response, Morris filed a motion on February 1, 2017, seeking dismissal of all of his amended complaints and requesting to file yet another amended complaint. (Dkt. #44.) The next day, defendants Dickman and Fremgen filed a joint motion to dismiss all versions of plaintiff's complaint (dkt. #46). Since then, Morris has filed opposition materials, as well as numerous other motions, which the court has reviewed to learn more about the contours of his claims. Having considered all of the parties' filings, the court will now grant defendants' motion to dismiss, deny Morris's motions and direct entry of final judgment.

ALLEGATIONS OF FACT[1]

During all relevant times, Morris was incarcerated at the Wisconsin Secure Program Facility ("WSPF"). The defendants are Tammy Dickman, an employee in WSPF's business office, and Diane Fremgen, an employee with the Clerk of Court for the Wisconsin Court of Appeals.

In June of 1999, Morris was convicted of two counts of first-degree sexual assault of a child and two counts of incest with a child. *State of Wisconsin v. Morris*, Case No. 1998CF0027 (Waushara Cty. Cir. Ct.). The Wisconsin Court of Appeals affirmed these convictions in January of 2002. *State of Wisconsin v. Morris*, App. No. 2000AP1530.

On November 18, 2013, Morris filed a petition for a writ of mandamus. *Morris v. Dutcher*, Case No. 2013AP2544-W. Even though Waushara County Circuit Court Judge Guy Dutcher was named as the respondent, it was apparent that Morris intended to proceed against Fremgen and Wisconsin Chief Deputy Clerk Christopher Paulson. In his petition, Morris claimed that Fremgen and other individuals excluded motions, documents and letters from his 2000 state court criminal file. He also claimed that Paulsen was unable to find certain letters from Morris's trial attorney, which Morris believes were wrongfully

---

[1] In addressing any pro se litigant's complaint, the court reads the allegations generously, reviewing them under "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 521 (1972). For purposes of this order, the court accepts all well-pled allegations in Morris's complaint as true. Further, the court has taken judicial notice of public court records related to Morris's allegations. *Hensen v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). The court has accessed those records using documents defendants submitted, as well as the Wisconsin Circuit Court Access website, https://wcca.wicourts.gov, and the Wisconsin Supreme Court and Court of Appeals website, https://wscca.wicourts.gov.

removed. Morris further asserted that Fremgen and others would not permit him to file documents in his case. Morris next claimed that he submitted documents in 2009 in support of his appeal in another matter, and Paulson added them to his file, but then told him that the court would not take action with respect to it because his petition had been denied more than a year before. Morris argues that the absence of these documents denied him due process during his criminal proceeding, in particular because the excluded filings provided proof that the state's witnesses lied.

After filing the petition, Morris received a notice directing him to either file his indigency application or pay the $195.00 filing fee within ten days. Morris alleges that he attempted to send his indigency application on November 27, 2013, but defendant Dickman, then working in WSPF's business office, did not send it out at that time. As of that day, however, Morris was still incarcerated at the New Lisbon Correctional Institution; he was not incarcerated at WSPF until December 20, 2013. *See* http://offender.doc.state.wi.us/lop/. Regardless, there is no dispute that Morris's indigency application *was* sent on December 5, 2013. Morris further claims that he sent a letter to appellate clerk Fremgen, explaining the delay and asking that it be excused. Morris then followed up on his petition for supervisory writ by filing a 50-page motion for discovery and 200 pages of exhibits, in which he purported to challenge his underlying criminal convictions and requested discovery and an *in camera* inspection.

Because Morris received no response to his petition, he filed a second petition on April 22, 2014. *Morris v. Fremgen & Paulsen,* Case No. 2014AP0892-W. He also filed a

motion for miscellaneous relief on April 29. The court treated this latter filing as a motion for voluntary dismissal, and closed the appeal on June 13, 2014, and Morris took no further action with respect to this petition.

On April 30, 2014, the Wisconsin Court of Appeals also denied Morris's petition for writ of mandamus. *Morris v. Dutcher*, Case No. 2013AP2544, slip op. In doing so, the court explained to Morris that mandamus is an extraordinary legal remedy only available in limited circumstances where a public official "has clearly violated a plain legal duty and the party seeking relief has acted promptly and faces grave hardship or irreparable harm for which there is no other adequate remedy at law." *Id.* at 2. The court of appeals noted that Morris's submissions were unclear, referencing both his appeal and other petitions, and that he failed to show entitlement to relief. The court further noted that Morris conceded failing to exhaust his administrative remedies, indicating that he had an adequate remedy at law. *Id.*

In response to the April 30 order in Case No. 2013AP2544, Morris filed several, additional motions in May of 2014, seeking clarification on and relief from the Wisconsin Supreme Court on the court of appeals decision in Case No. 2013AP2544. Among other things, Morris asked that the court of appeals be compelled to determine what happened to the documents that were the subject of his rejected petition. In his view, Fremgen specifically mislabeled one of his filings as a "Petition for Review."

On June 10 2014, Morris requested dismissal of his other petitions and submitted yet another petition, which was entered in Case No. 2013AP2544 as another filing in that

matter.  Later that same month, Morris wrote Fremgen a few times to ask if she received this second writ and petition.  He followed up by writing to the court of appeals to request his money back for the partial filing fee on his later-dismissed petition, but that request was denied.  On August 4, 2014, the Wisconsin Supreme Court denied all of Morris's pending motions in Case No. 2013AP2544 as well.  On August 8, 2014, Morris then filed an internal complaint about defendant Dickman, claiming again that she failed to mail his indigency paperwork back in December of 2014.

Finally, on September 3, 2014, Morris wrote a letter to Justice Shirley Abrahamson of the Wisconsin Supreme Court.  Fremgen responded to this letter on September 12, 2014. (Dkt. #47-2.)  In it, Fremgen acknowledged Morris's complaint that the court was not receiving his filings, but assured him that the court of appeals reviewed all of his filings in issuing the April 30, 2014, order.  She further informed him that any subsequent filings had been construed as a petition for review and were submitted to the Wisconsin Supreme Court for consideration, and that because his case was closed, no action would be taken on any further filings by the court of appeals.

OPINION

I. **Motion to Amend**

Morris is proceeding on an access to courts claim against Dickman and Fremgen in their individual and official capacities.  As an initial matter, Morris opposes defendants' motion to dismiss because he would like to amend his complaint again. While he filed several different iterations of his claims since defendants filed their motion to dismiss, the

court will assume that Morris may still amend his complaint "once as a matter of course" under Fed. R. Civ. P. 15(a)(1)(A) or (B), because he exercised it exactly 21 days after the court granted him leave to proceed (dkt. #35) and a day before defendants' motion to dismiss (dkt. ##44, 46). Even where done as a matter of course, however, the court may deny a party's motion to amend because "the proposed amendment fails to cure the deficiencies in the original pleading [and cannot] survive a second motion to dismiss." *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 2012).

At this point, Morris has filed a complaint (dkt. #1), amended complaint (dkt. #10), second amended complaint (dkt. #32), and now what is effectively a third amended complaint, as well as numerous exhibits related to his criminal trial and the post-conviction proceedings. Morris now claims that he "needs to establish a record of why no action was taken on the motion for in camera inspection and discovery." (Dkt. #44, at 2.) Yet the court has reviewed all of his filings related to his claims and is confident that Morris cannot avoid dismissal on the issues raised in defendants' motion to dismiss by amending his complaint yet again. As such, the court turns to that motion.

II.     **Motion to Dismiss**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief can be granted." *Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1013 (W.D. Wis. 2008). In "[e]valuating the sufficiency of the complaint, [the court] construes it in the light most favorable to the nonmoving party, accept[s] well-[pled] facts as true, and

draw[s] all inferences in [his] favor." *Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 946 (7th Cir. 2013). The plaintiff need not provide detailed factual allegations, but must provide "enough facts to raise [the claim] above the level of mere speculation." *Riley v. Vilsack,* 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")). A plaintiff must provide enough facts to state a claim that is plausible on its face and to allow the "court to infer more than the mere possibility of misconduct." *Iqbal,* 556 U.S. at 679.

Defendants Dickman and Fremgen seek dismissal because Morris has failed to state a claim upon which relief can be granted, as well as on grounds of immunity. Drawing every inference in Morris's favor, nothing in Morris's allegations or proposed allegations, his many filings or the public record related to his claims supports, whether directly or by inference, his claim of a denial of access to courts against defendants Fremgen and Dickman. Regardless, both defendants are immune from liability for damages based on their alleged conduct as public employees.

### A. Failure to State a Claim

To avoid dismissal, Morris's allegations must support at elast an inference of an access to courts claim, which is by itself no small task. A prisoner's right to access the courts is limited to the ability to file claims challenging a sentence or conditions of confinement. *See Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977). To state a valid claim in this context, a prisoner must allege that he was both (1)

7

deprived of access to the courts and (2) suffered an actual injury as a result. *See Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009).

To make this showing, Morris must "spell out, in minimal detail, the connection between the alleged [deprivation] and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). In other words, he must point to a concrete, non-frivolous claim or defense he might have raised but for his inability to access the courts. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Marshall*, 445 F.3d at 968; *see also Eichwedel v. Chandler*, 696 F.3d 660, 673 (7th Cir. 2012) ("[A]n inmate may prevail on a right-of-access claim only if the official actions at issue hindered his efforts to pursue a legal claim." (internal citation and quotation marks omitted)).

Morris's claim against defendant Dickman is straightforward: she was not involved in handling his attempts to pursue his petitions because Morris had not yet been transferred to WSPF for incarceration when he filed it. Indeed, when he tried to file it, Morris was located at the New Lisbon Correctional Institution, not WSPF where Dickman was employed. Even assuming that Dickman *did* somehow fail to send these materials on time, the Wisconsin Court of Appeals reviewed and addressed his petition on the merits. Most importantly, for purposes of any arguable claim against Dickman, the petitions were *not* denied because his indigency paperwork was late. To the contrary, the Wisconsin Court of Appeals concluded that Morris did not present any issue that warranted relief based on the merits of his claims. As such, while the court permitted Morris to proceed past

8

screening previously, the record establishes that nothing Dickman did caused his petitions to fail.

As to defendant Fremgen, while she had more involvement with one of Morris's petitions, because she worked at the Wisconsin court, Morris's allegations do *not* support an inference that she curbed his efforts to pursue his petition. Rather, the publicly available docket of Morris's two petitions indicate that Morris submitted *many* filing that the court took under advisement before determining that his petitions lacked merit. Further, the Wisconsin Court of Appeals' decision itself illustrates that the court was in receipt of not only his petitions, but also his numerous other filings, and that, regardless, he was not entitled to relief.

While Fremgen may have mislabeled one of Morris's filings as a "petition for review," that action did not create a barrier to the court. Rather, the record indicates that the court took Morris's filing under advisement and denied him the relief he requested. Thus, Morris has not alleged any facts that support an inference that defendant Fremgen's mislabeling of his filing caused him to lose out on the relief he sought in his petitions. At most, these defendants may have mischaracterized one or more of Morris's filings or delayed their submissions to a court, but neither were the basis for a court denying any requested relief.

**B. Immunity from Individual and Official Capacity Liability for Damages**

Even assuming that both defendants somehow thwarted what should have been a successful petition, both are immune from damages on qualified immunity and Eleventh

9

Amendment grounds. Qualified immunity protects government employees from liability for civil damages for actions taken within the scope of their employment, unless their conduct violates "clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "In determining whether a constitutional right has been clearly established, it is unnecessary for the particular violation in question to have been previously held unlawful." *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Instead, the question is whether the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

Here, because no facts suggest that either defendant actually affected the outcome of his petitions, Morris has alleged no facts that would support a finding that either Dickman or Fremgen violated a clearly established right. As such, dismissal of Morris's claims against them in their individual capacities is appropriate. The same is true as to Morris's official capacity claims against defendants. This is because an official capacity claim against an individual defendant constitutes a claim against the government entity itself, and the Eleventh Amendment precludes a citizen from suing a state for money damages in federal court without the state's consent. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). As Morris is seeking damages from both defendants on his claims against them in their official capacities, the Eleventh Amendment bars recovery here.

**III. Morris's Other Pending Motions**

Finally, the court will address Morris's other pending motions, but only briefly to assure Morris that the court has received and reviewed his requests and briefly explain why his other motions do not change the outcome of defendants' motion to dismiss. Several of Morris's motions object to the court's screening order because it did not explicitly take into account additional allegations described in Morris's proposed second amended complaint. (Dkt. #37, #38, #39, #40, #44, #64, #70.) Yet the court reviewed all of Morris's versions of his claims in reaching its conclusion, so it would not have changed the result here.

For example, Morris specifically challenges the court's decision to dismiss Rice at the screening stage. (Dkts. #39, #70.) Yet the court dismissed Rice because he is an assistant attorney general for the State of Wisconsin, and thus he had no duty to ensure that Morris's petitions were properly filed and considered. Moreover, Morris did not submit any allegations that would suggest that Rice participated in any of the court's ultimate resolution of his petitions. While Morris objects on the basis that defendant Fremgen "could not have concealed" his petitions without Rice, this is not an allegation supporting a finding that Rice had any involvement in whether or how Fremgen allegedly suppressed or processed his petitions. Similarly, none of Morris's other objections to the court's screening order affect the outcome of this lawsuit.

Some of Morris's other motions relate to his request for legal loans in excess of what he is currently receiving. (Dkts. #41, #58, #64, #71.) Morris has submitted several

11

additional requests to this court for an extension of his legal loan, and the court has denied each of them because there is no evidence that Morris's ability to litigate this matter has been hindered by the fact that he has met the statutory limits of legal loans available to him. The same still holds true. Although Morris continues to insist that he needs an additional legal loan for various reasons, the fact remains that he has filed numerous motions and documents with the court, suggesting that while Morris may not be receiving the loans he desires, he is still receiving the supplies that he needs to litigate this matter. Accordingly, and for the reasons previously explained to Morris in the court's March 14 and May 10, 2016 orders, the court would still would deny these motions, if not dismissed (dkt. #21, #28).

A few other motions deal with Morris's requests have the court recruit counsel on his behalf (dkts. #77, #80, #81, #84). While recruiting counsel for Morris may have streamlined this matter, the court has been able to sift through his filings to determine that his claims have no merit. As such, the court finds no basis to recruit counsel for him.

Finally, Morris has filed a few other motions seeking miscellaneous relief:

- Notice of filing (dkt. #42): Morris wanted to ensure that an appendix of materials he intended to submit to the court made it into the record.

- Notice of Objection (dkt. #48): Morris objected to a response date set by the clerk of court and requested a stay of the proceedings.

- Motions for Clarification (dkts. #69, #76): Morris asks a question about the electronic filing process.

- Motion for Judge Conley to Verify Non-Appeal Debt (dkt. #74): Morris asks the court to reconsider its order denying his request to proceed *in forma pauperis* on appeal.

- Motion for Clarification on Page Count (dkt. #75): Morris asks the clerk of court to confirm the number of pages of one of his submissions.

- Motion for Recusal (dkt. #80): Morris expresses concern that this court has feelings of resentment against him.

None of these motions entitle Morris to any form of relief related to his access to courts claim in this lawsuit, and so they will be denied as moot. Even so, the court can assure Morris that while the relief he seeks is legally unavailable, the dismissal of his claim is not a product of personal bias against him. Rather, it is the unavoidable result of his having pleaded no cognizable federal claim against the defendants here.

## ORDER

IT IS ORDERED that:

1. Defendant Diane Fremgen and Tammy Dickman's Motion to Dismiss (dkt. # 46) is GRANTED.

2. The court has considered all of plaintiff Michael Morris's motions, and each of them are DENIED.

3. The clerk of court is DIRECTED to enter judgment in defendants' favor and close this matter.

Entered this 27th day of September, 2017.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge